IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

CENTER FOR BIOLOGICAL DIVERSITY,
ALABAMA CENTER FOR SUSTAINABLE
ENERGY d/b/a ENERGY ALABAMA,
APPALACHIAN VOICES, SOLAR UNITED
NEIGHBORS, SOUTHERN ALLIANCE FOR
CLEAN ENERGY, and SOWING JUSTICE,
Plaintiffs,

v.                                    No. 3:21-cv-00319

TENNESSEE VALLEY AUTHORITY,
Defendant.

---

**TENNESSEE VALLEY AUTHORITY'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

---

David D. Ayliffe, Director, Litigation
Lane E. McCarty, Attorney
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.2396
lemccarty@tva.gov

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT……………………….................................................................. 1

INTRODUCTION……………………………….................................................................. 1

ARGUMENT…………………………………………………………………………...…3

I.    Plaintiffs are Not Entitled to Summary Judgment on
      Stand-Alone APA Claims................................................................................................ 3

II.   Plaintiffs Are Not Entitled to Summary Judgment on Claims 1 and 2............................. 6

      A.    TVA's Response to the Petition is not a final agency action,
            and therefore, Plaintiffs are not entitled to summary judgment
            on Claim 1................................................................................................................. 6

            1.    Summary judgment on Claim 1 should be denied
                  on procedural grounds.................................................................................. 6

            2.    Summary judgment on Claim 1 should be denied on the merits…………. 7

      B.    TVA was not obligated to act in response to the Petition, and therefore,
            Plaintiffs are not entitled to summary judgment on Claim 2................................. 9

III.  Plaintiffs are Not Entitled to Summary Judgment on Their Improperly-Raised
      Section 553 Claim....................................................................................................... 10

      A.    The Petition is not a valid rulemaking petition....................................................... 11

      B.    The *TVA Membership in External Organizations* policy does not
            "implement, interpret, or prescribe law or policy." ............................................... 12

      C.    The term "rule" in § 553(e) encompasses substantive rules, not general
            statements of agency policy.................................................................................. 15

      D.    The *TVA Membership in External Organizations* policy is a general
            statement of agency policy and therefore not subject to APA rule
            making procedures............................................................................................... 18

IV.   Plaintiffs Are Not Entitled to Summary Judgment Because They Have Failed
      to Establish Standing.................................................................................................. 19

      A.    Plaintiffs have failed to establish organizational standing..................................... 19

i

B.  Plaintiffs have failed to establish associational standing..........................................22

C.  Plaintiffs lack standing under the "zone of interest" test.........................................23

CONCLUSION ........................................................................................................................24

Case 3:21-cv-00319-TAV-HBG   Document 27   Filed 01/18/22   Page 3 of 29   PageID #: 521

## PRELIMINARY STATEMENT

Plaintiffs' motion for summary judgment (Doc. 20), challenging the *TVA Membership in External Organizations* policy, founders on the shoals of three threshold requirements for Administrative Procedure Act ("APA") claims. First, Plaintiffs have failed to identify any statute or law that provides a meaningful standard of review by which to judge Plaintiffs' APA claims. Second, Plaintiffs have failed to identify any final agency action by TVA cognizable as a claim under the APA. And third, Plaintiffs have failed to identify any legal duty owed by TVA that may be compelled under the APA. Because Plaintiffs have failed to meet any of these threshold requirements, Plaintiffs are not entitled to summary judgment. Their Complaint should be dismissed for the reasons stated below and in TVA's pending motion to dismiss. (*See* TVA MTD, Doc. 14; TVA's Br. Supp. MTD ("TVA Br."), Doc. 15; TVA's Reply Br. Supp. MTD ("TVA Reply"), Doc. 23.)

## INTRODUCTION

Plaintiffs' Complaint asserts two claims for relief based on alleged violations by TVA of the APA. Claim 1 asserts that TVA violated 5 U.S.C. § 555(e) by failing to "meaningfully respond" to the Petition (Compl., Doc. 1 at PageID##17-18, ¶¶ 68-72);[1] and Claim 2 asserts that TVA violated 5 U.S.C. § 555(b) because TVA's alleged inaction on Plaintiffs' Petition constitutes agency action unreasonably delayed or unlawfully withheld (*id.* at PageID##17-18, ¶¶ 73-77). Both claims arise under Section 555, the APA provision pertaining to agency proceedings. (TVA Br., Doc. 15 at PageID#80, n.19.) The Complaint asserts no other statutory violations.

TVA has moved to dismiss Claim 1 because Plaintiffs have identified no final agency action by TVA cognizable as a claim under the arbitrary and capricious standard of 5 U.S.C.

---

[1]     Pagination is to the PageID# generated by the CM/ECF system.

§ 706(2) of the APA.[2] TVA has moved to dismiss Claim 2 because Plaintiffs' Petition was not made in connection with an ongoing agency proceeding, did not require TVA to engage in rule making under the APA, and did not identify an action that TVA may be compelled to take under 5 U.S.C. § 706(1).[3]

In response to TVA's motion to dismiss, Plaintiffs filed a motion for summary judgment (Doc. 20) and two separate, but identical briefs ("Opposition" or "Opp.", Docs. 21, 22),[4] purporting to oppose TVA's motion to dismiss (Doc. 14) and to support Plaintiffs' summary judgment motion (Doc. 20). Plaintiffs' Opposition seeks to salvage Plaintiffs' lawsuit by pretending that the legal basis for their APA claims is not 5 U.S.C. § 555, as pleaded in the Complaint, but a failure to act under 5 U.S.C. § 553, the APA provision governing rulemaking ("Section 553 Claim") (*see* Opp., Doc. 21 at PageID##428-29, 432-35); and they move for summary judgment based on that improperly-raised claim. Plaintiffs, however, did not plead a violation of Section 553 in their Complaint, and Plaintiffs' request for summary judgment on this new, unpled claim is procedurally improper. TVA has previously replied to Plaintiffs' Opposition to the extent it constituted a response to TVA's motion to dismiss. (*See* TVA's Reply, Doc. 23.)[5]

---

[2]     *See* TVA Br., Doc. 15 at PageID##84-86; TVA Reply, Doc. 23 at PageID##497-99.

[3]     *See* TVA Br., Doc. 15 at PageID##74-84; TVA Reply, Doc. 23 at PageID##489-97.

[4]     Both briefs are entitled "Plaintiffs' Opposition to Defendant's Motion to Dismiss and Memorandum in Support of Plaintiffs' Motion for Summary Judgment" ("Opposition" or "Opp."). TVA's page references in this response are to the document filed at Docket Entry No. 21.

[5]     While TVA's arguments in support of its pending motion to dismiss (Doc. 14) do overlap with TVA's arguments made in this brief opposing Plaintiffs' summary judgment motion, TVA strives to not repeat the arguments made in its briefs supporting TVA's motion to dismiss. Instead, it refers to the relevant portions of those briefs.

TVA now responds to Plaintiffs' Opposition to the extent it seeks summary judgment on Claims 1 and 2 and/or Plaintiffs' improperly-raised Section 553 Claim. As set forth below, none of these claims presents a viable theory under the APA. Part I explains that Plaintiffs are not entitled to summary judgment on any of their APA claims because each is a stand-alone APA claim which supplies the Court with no meaningful standard by which to engage in a review of Plaintiffs' claims under the APA. Part II addresses why Plaintiffs are not entitled to summary judgment on Claims 1 and 2. To the extent the Court were to consider Plaintiffs' improperly-raised Section 553 Claim on the merits, Part III explains that Plaintiffs are not entitled to summary judgment on this new claim because TVA had no legal duty to respond to an invalid petition that does not seek a rule within the meaning of the APA. Last, Part IV shows that Plaintiffs have failed to establish standing.

## ARGUMENT

### I.     Plaintiffs are Not Entitled to Summary Judgment on Stand-Alone APA Claims

The APA authorizes judicial review of "final *agency action* for which there is no other adequate remedy in a court." 5 U.S.C. § 704.[6] In such cases, a reviewing court is authorized to "compel *agency action* unlawfully withheld or unreasonably delayed[,]" 5 U.S.C. § 706(1), and to "hold unlawful and set aside *agency action*, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]" *id.* § 706(2). The APA, thus, provides "a limited cause of action," *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 494 (6th Cir. 2014), where a person has suffered a "legal wrong because of agency action, or [has been] adversely affected or aggrieved by agency action *within the meaning of a relevant statute* . . . ." 5 U.S.C. § 702.

---

[6]     Emphasis added herein and throughout this brief unless otherwise indicated.

3

Ignoring the plain textual requirement for *agency action* and a *relevant statute* serving as the source of an agency duty to act, Plaintiffs argue that summary judgment is appropriate because the APA alone can supply a statutory duty requiring TVA to act on their Petition. (*See* Opp., Doc. 21 at PageID#427 ("the only agency action at issue is the discrete APA requirement for TVA to *respond* to the APA Petition"); *id.* at PageID#440 ("Plaintiffs merely seek an Order directing TVA to definitively *respond* to the Petition") (emphases in originals). Not so.

"The relevant statute . . . is the statute whose violation is the gravamen of the complaint . . . ." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 886 (1990); *accord Webster v. Doe*, 486 U.S. 592, 600 (1988) ("'Both *Overton Park*[7] and *Heckler*[8] emphasized that § 701(a)(2) requires careful examination of the statute on which the claim of agency illegality is based (the Federal-Aid Highway Act of 1968 in *Overton Park* and the Federal Food, Drug, and Cosmetic Act in *Heckler*))). Absent a statute with substantive standards, judicial review is precluded because there is no "law to apply" and "no meaningful standard against which to judge the agency's exercise of discretion." *Or. Nat. Res. Council v. Thomas*, 92 F.3d 792, 797-98 (9th Cir. 1996) (affirming district court's finding that "the APA is merely a vehicle for carrying substantive challenges to court" and plaintiffs couldn't point to any independent, substantive body of law that confined the Forest Service's discretion to go forward with the timber sales, its decision to sell the timber was committed to agency discretion under § 701(a)(2)). *See Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 21-22 (1st Cir. 2020) (affirming the dismissal of a "free-standing" APA claim while observing that whether a court could entertain a "so-called 'pure APA' action without

---

[7]     *Citizens to Preserve Overton Park, Inc. v. Volpe* ("*Overton Park*"), 401 U.S. 402 (1971).

[8]     *Heckler v. Chaney*, 470 U.S. 821 (1985).

4

reference to another substantive statute is a question we need not and do not decide" here);[9] *Or. Nat. Res. Council*, 92 F.3d at 797-98 (affirming the dismissal of the plaintiffs' § 706(2) claim because "there is no 'relevant statute,' as plaintiffs' 'arbitrary and capricious' claim purports to stand free of any other law" (quoting *Lincoln v. Virgil*, 508 U.S. 182, 191 (1993)).

Consequently, a claim which fails to identify "a relevant statute" under which judicial review can proceed cannot qualify for the APA's private right of action. *See, e.g., Heckler*, 470 U.S. at 828-30 & 834 (claims under § 706(2) are subject to the same limits on reviewability set forth in § 701(a)) and require "meaningful standards" for defining the limits of an agency's discretion in order for there to be "law to apply" under § 701(a)); *Lunney v. United States*, 319 F.3d 550, 559 n.5 (2d Cir. 2003) ("If agency actions could be challenged as 'arbitrary and capricious,' without reference to *any* other standard, then § 701(a)(2)'s limitation on APA review would amount to no limitation at all, and nothing would ever be 'committed to agency discretion by law.'") (emphasis in original); *El Rescate Legal Servs. v. Exec. Office of Immigration Review*, 959 F.2d 742, 753 (9th Cir. 1991) (affirming the district court's summary judgment order on plaintiffs' "third cause of action, brought under the APA" because the plaintiffs had not proven any violation of the Immigrational and Nationality Act, the relevant statute which supplied the substantive standards).

---

[9]       In *Union of Concerned Scientists*, unlike here, the First Circuit found that the dismissed free-standing APA claim was subsumed within the plaintiffs' other claims which *did* allege "a justiciable standard," namely, the Federal Advisory Committee Act ("FACA"). *Id.*, 954 F.3d at 22. In this case, however, Plaintiffs have alleged no other statutory or regulatory requirement to guide the Court in assessing the propriety of TVA's actions with regard to the Petition. While Plaintiffs' Complaint referred to the TVA Act generally and individual provisions of the TVA Act, Plaintiffs made clear in their Opposition that they are relying solely on the APA as basis for what they claim is TVA's duty to act. (*See* Opp., Doc. 21 at PageID##440, 427.) This is an inappropriate use of the APA.

5

Each of Plaintiffs' claims—Claim 1, Claim 2, and the improperly-raised Section 553 Claim—are wholly untethered to a "relevant statute" or regulation obligating TVA to act. Plaintiffs have identified no statute or regulation (other than the APA) that TVA allegedly has violated, or which would supply a legal duty to act. Plaintiffs' APA claims do not fall under the TVA Act's broad statutory scheme, as that is precluded by *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55 (2004) (*see* TVA Br., Doc. 15 at PageID##74-76, 83-84; TVA Reply, Doc. 23 at PageID##494-96.) Nor do the claims fall under any specific provision of the TVA Act. (*See* TVA Br., Doc. 15 at PageID##83-84.) Neither Plaintiffs' Complaint nor the Opposition identifies any statutory or regulatory scheme that can supply a meaningful standard of review. As such, having no statute which supplies a duty to act and no meaningful standard of review upon which to base Plaintiffs' APA claims, Plaintiffs are not entitled to summary judgment on any claim.

Therefore, because the APA cannot serve as the sole source for an alleged statutory duty for TVA to act and "cannot be sufficient by itself to provide the requisite 'meaningful standard' for courts to apply in evaluating the legality of agency action" under an arbitrary and capricious standard, *Lunney*, 319 F.3d at 559 n.5, Plaintiffs' freestanding APA claims must fail.

## II.    Plaintiffs Are Not Entitled to Summary Judgment on Claims 1 and 2

### A.    TVA's Response to the Petition is not a final agency action, and therefore, Plaintiffs are not entitled to summary judgment on Claim 1.

#### 1.    Summary judgment on Claim 1 should be denied on procedural grounds.

The Court should not consider a summary judgment request on Claim 1, Plaintiffs' arbitrary and capricious claim, in the absence of a full administrative record. *See, e.g., Nieves v. McHugh*, 111 F. Supp. 3d 667, 679–80 (E.D.N.C. 2015) ("[I]n an APA claim, 'summary judgment becomes the mechanism for deciding, as a matter of law, whether the agency action is supported

by the administrative record and otherwise consistent with the APA standard of review.'" (quoting *Ohio Valley Envtl. Coal. v. Hurst*, 604 F. Supp. 2d 860, 879 (S.D.W. Va. 2009))); *see also Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013) ("Allowing the allegations of a complaint to become the focal point of judicial review introduces an unnecessary and inevitably unproductive step into the process. The relevant inquiry [of an APA claim] is—and must remain—not whether the facts set forth in a complaint state a plausible claim but, rather, whether the administrative record sufficiently supports the agency's [action]."). Here, there is no final agency action, no administrative record, and therefore, no legally cognizable basis upon which the Court could apply the APA's arbitrary and capricious standard of review.

### 2.    Summary judgment on Claim 1 should also be denied on the merits.

Plaintiffs' Claim 1 challenges TVA's Response as "arbitrary and capricious." (Opp., Doc. 21 at PageID#447.) As discussed in TVA's pending motion to dismiss, TVA's Response to the Petition is not a final agency action cognizable as a claim under 5 U.S.C. § 706(2). (*See* TVA Br., Doc. 15 at PageID##84-86; TVA Reply, Doc. 23 at PageID##497-98.) TVA's Response referred Plaintiffs to the *TVA Membership in External Organizations* policy which provides "more definitive guidance" to the TVA Board on TVA's participation with external organizations. (*Bd. Practices*, Doc. 15-3 at PageID#129). This Response was not a final decision on any matter, nor did it determine any rights of Plaintiffs or their members. In short, TVA's Response marked neither "the 'consummation' of . . . [TVA's] decision-making process" nor constitutes a decision "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted). Such a non-binding statement by an agency is not a final agency action subject to review under § 706(2). *See SUWA*, 542 U.S. at 71-72.

7

In *Independent Equipment Dealers Association v. Environmental Protection Agency (EPA)*, the D.C. Circuit found that an EPA letter stating that manufacturers were in compliance with the Clean Air Act ("CAA") was not a final agency action because "[c]ompelling no one to do anything, the letter had no binding effect whatsoever—not on the agency and not on the regulated community." *Id.*, 372 F.3d 420, 427 (D.C. Cir. 2004); *see also Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 594 (9th Cir. 2008) (finding that the Army Corps' jurisdictional determination was not a final agency action when the plaintiff's legal obligations arose directly from the Clean Water Act, not from the Corps' issuance of a determination); *Indus. Customers of Nw. Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005) ("[T]he fact that a statement may be definitive on some position is insufficient to create a final action subject to judicial review.").

As in these cited cases, TVA's Response does not constitute a final decision on any matter, nor does it determine any rights of Plaintiffs or their members. Moreover, TVA's Response brought about no change and "left the world just as it found it, and thus cannot be fairly described as implementing, interpreting, or prescribing law or policy." *Indep. Equip. Dealers*, 372 F.3d at 428 (a letter from an agency official, expressing the agency's understanding of applicable law, was not a final agency action). TVA's Response was "purely informational in nature" in that it directed Plaintiffs to the *TVA Membership in External Organizations* policy. *Id.* at 427. TVA's Response did not "dictate any activity or action" whatsoever. *See Pac. Coast Fed'n of Fishermen's Ass'n v. Gutierrez*, No. 1:06-cv-245-OWW-LJO, 2007 WL 1752289, *12 (E.D. Cal. June 15, 2007) (holding that neither an agency operating criteria and plan nor a biological opinion operation are final agency actions because they are "informational" and do not implement or constitute the "last word" authorizing action or inaction). Thus, because Plaintiffs have failed to show that TVA's

8

Response was anything more than a letter providing information to Plaintiffs, and not a final agency action, Plaintiffs are not entitled to summary judgment on Claim 1.**10**

**B.** **TVA was not obligated to act in response to the Petition, and therefore, Plaintiffs are not entitled to summary judgment on Claim 2.**

Plaintiffs' Claim 2 asserts that if TVA's Response is not a final agency action, then TVA is required to take agency action and its failure to do so constitutes unreasonable delay in resolving the Petition. (*See* Opp., Doc. 21 at PageID#448.) But, "[b]ecause 'a delay cannot be unreasonable with respect to action that is not required,' an unreasonable-delay claim requires that the agency has a duty to act in the first place." *Env't Integrity Project v. United States Env't Prot. Agency*, 160 F. Supp. 3d 50, 57 (D.D.C. 2015) (quoting *Ctr. for Biological Diversity v. EPA*, 794 F. Supp. 2d 151, 156 (D.D.C. 2011)). A plaintiff must identify a "non-discretionary, statutory duty" that an agency failed to perform in order to invoke § 706(1). *SUWA*, 542 U.S. at 64 ("[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*.").

Here, Plaintiffs have identified no agency action that TVA was statutorily required, yet failed, to take. The individual provisions of the TVA Act cited in the Complaint do not give rise to such a legal duty (TVA Br., Doc. 15 at PageID##83-84), nor does the TVA Act generally supply a discrete mandatory duty to act (*id.* at PageID##74-76, 83-84; TVA Reply, Doc. 23 at

---

**10**      Even if the Court finds that TVA's Response was a final agency action, the appropriate remedy where an agency's response to a petition is found to be deficient is "remand for further explanation or reconsideration, not a mandate to promulgate the requested rule." *Henley v. Food & Drug Admin. (Dep't of Health & Hum. Servs.),* 873 F. Supp. 776, 785–86 (E.D.N.Y. 1995), *aff'd sub nom. Henley v. Food & Drug Admin.,* 77 F.3d 616 (2d Cir. 1996). "It is only in the rarest and most compelling of circumstances that this court has acted to overturn an agency judgment not to institute rulemaking." *WWHT, Inc. v. F.C.C.*, 656 F.2d 807, 818-19 (D.C. Cir.1981) (explaining that remand for further explanation or reconsideration is the usual remedy).

PageID##494-96). Plaintiffs ignore the requirement of a mandatory discrete agency action by arguing that the APA alone establishes TVA's legal duty to act. This theory, however, has no support in any of the case law cited by Plaintiffs in their Opposition and runs counter to the threshold requirement for jurisdiction under the APA that a person must have suffered a "legal wrong because of agency action, or [have been] adversely affected or aggrieved by agency action *within the meaning of a relevant statute* . . . ." 5 U.S.C. § 702. When there is no "relevant statute" apart from the APA, there can be no duty to act on the part of the agency, and Plaintiffs cannot manufacture one. *See Alvardo v. Table Mountain Rancheria*, 509 F.3d 1008, 1019-20 (9th Cir. 2007) ("Absent such an assertion [of a duty to act], a Section 706(1) claim may be dismissed for lack of jurisdiction.").

## III. Plaintiffs are Not Entitled to Summary Judgment on Their Improperly-Raised Section 553 Claim

Plaintiffs' Section 553 Claim, raised for the first time in Plaintiffs' motion for summary judgment, is not properly before the Court. Without filing a motion to amend pursuant to Federal Rule of Civil Procedure 15, Plaintiffs cannot assert a new claim in a summary judgment motion, *see Davis v. Echo Valley Condominium Assoc.*, 945 F.3d 483, 496 (6th Cir. 2019) (plaintiff's assertion of a new claim in a summary judgment motion, without filing a motion to amend "dooms her claim"), or in a brief opposing TVA's motion to dismiss, *see Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000) (finding, "[w]hat plaintiffs may have stated, almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend" and affirming district court's denial of plaintiffs' request to amend complaint).

TVA's pending motion to dismiss the Complaint addresses Plaintiffs' claims as they were pleaded (Claim 1 under § 555(e) and Claim 2 under § 555(b)). TVA has not had the opportunity to move to dismiss and/or answer Plaintiffs' new Section 553 Claim. If Plaintiffs are not required

to follow the procedures of Rule 15(a), TVA will be denied its right to move to dismiss this claim, resulting in prejudice. *See, e.g., Tucker v. Union of Needletrades, Indus., & Textiles Emples.*, 407 F.3d 784, 788 (6th Cir. 2005) (permitting a plaintiff to amend in response to a motion to dismiss would subject defendants to unfair prejudice). If Plaintiffs wish to assert a new claim, Plaintiffs must first seek leave to amend their Complaint pursuant to Rule 15, thereby giving TVA an opportunity to oppose such a request. Accordingly, the Court should deny Plaintiffs' summary judgment motion and resolve TVA's pending motion to dismiss without consideration of Plaintiffs' improperly-raised Section 553 Claim.

### A. The Petition is not a valid rulemaking petition.

Even if the Court were inclined to consider the merits of Plaintiffs' Section 553 Claim,[11] Plaintiffs are not entitled to summary judgment because TVA had no duty to respond or initiate rulemaking in response to a petition that does not request a rule within the meaning of the APA.

*Center for Biological Diversity v. Bernhardt*, 509 F. Supp. 3d 1256 (D. Mont. 2020), is closely on point. There, the district court dismissed a similar APA claim brought by Plaintiff, Center for Biological Diversity, involving a petition to the United States Fish and Wildlife Service ("FWS") for an update to its grizzly bear recovery plan. The district court's cogent reasoning is directly pertinent here.

> [T]he first question is whether [the agency statement] constitutes a rule under § 551(4)—the answer to which determines whether the petition itself is valid. If there is no valid petition, the [petitioner's] so called "petition" is simply a solicitation letter for which the [agency] had no legal obligation to respond (and correspondingly, [the agency's] denial letter creates no rights or obligations and there is no final agency action). Only if the petition is valid does the [agency's] denial constitute a final agency action which, in turn, vests this Court with subject

---

[11] Plaintiffs do not dispute the basic premise that a claim for a violation of § 706(1) "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." (Opp., Doc. 21 at PageID#439 (quoting TVA Br., Doc. 15 at PageID#74 (quoting *SUWA*, 542 U.S. at 64)).

> matter jurisdiction over the merits. Only then may the Court reach the second issue of whether the [agency's]denial was arbitrary and capricious. Because the Court answers the first question in the negative, it lacks jurisdiction to reach the second.

*Ctr. for Biological Diversity v. Bernhardt*, 509 F. Supp. 3d 1256, 1265 (D. Mont. 2020).

General statements of policy are exempt from APA notice and comment requirements under § 553. *See* 5 U.S.C. § 553(b)(A) (Section 553 does not apply to "general statements of policy"). Because Plaintiffs' Petition is directed at a general statement of policy concerning TVA's participation in external organizations, (*see* TVA Br., Doc. 15 at PageID#80 (the *TVA Membership in External Organizations* policy "imposes no substantive requirements or legal obligations and amounts to a general statement of TVA policy and Board practice")), the rule-making procedures of § 553 of the APA do not apply. (*See* TVA Reply, Doc. 23 at PageID##495-96.) And because TVA's policy is not subject to rulemaking under the APA, it cannot be the subject of a valid APA rulemaking petition. *See, e.g., Ctr. for Biological Diversity*, 509 F. Supp. 3d at 1265-66 (finding that the subject of the plaintiff's petition, which concerned a recovery plan by the FWS, was not a rule within the meaning of the APA).[12] Because Plaintiffs' Petition is not a valid petition for rulemaking, Plaintiffs are not entitled to summary judgment on their Section 553 Claim.

### B. The *TVA Membership in External Organizations* policy does not "implement, interpret, or prescribe law or policy."

Plaintiffs argue that the rule they requested "squarely fits within the APA's broad definition of a 'rule'[.]" (Opp., Doc. 21 at PaegID#433.) It does not. The APA defines a "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4). The *TVA Membership in External Organizations* policy does not "implement," "interpret," or "prescribe" law or policy.

---

[12]     Plaintiffs' Opposition cites no authority for the proposition that TVA must respond to a petition that does not request a rule within the meaning of the APA.

12

The *TVA Membership in External Organizations* policy imposes no substantive requirements or legal obligations and was adopted to "provid[e] *more definitive guidance* to the CEO as to limitations that should be applicable to TVA's participation in external organizations." (*Bd. Practices*, Doc. 15-3 at PageID#129.) It does not "implement" any law or policy. Whenever TVA's policy touches on legal requirements or standards, it is to direct the reader of the policy to "TVA's statutory mission or legal obligations." (*Id.*) TVA's policy also describes what the Board should consider when entering into contracts and agreements with external organizations. (*See id.* ("TVA may generally participate in any external organization that it determines can assist TVA in the advancement of its statutory or corporate mission").) In other words, the policy is simply guidance and has no tangible effect on any regulated party.

In *Anderson v. McCarthy*, the court concluded that an agency guidance document did not implement law or policy and was not a "'rule—or a rule 'equivalent'" because it was "comprised of recommendations with which compliance is permissive, not mandatory." No. C 16-00068 WHA, 2016 WL 6834215, at *8 (N.D. Cal. Nov. 21, 2016); *see also Ctr. for Biological Diversity*, 509 F. Supp. 3d at 1266 (rejecting the plaintiff's argument that a recovery plan implements law because it enacts a statutory mandate). That is equally true here. The *TVA Membership in External Organizations* policy imposes no mandatory actions; instead, it merely explains what the CEO and the TVA Board should consider regarding TVA's participation with external organizations.

The *TVA Membership in External Organizations* also does not "interpret" law or policy. The Attorney General's Manual on the Administrative Procedure Act ("*Manual on APA*"), persuasive authority on the meaning of the APA, describes an interpretive rule as one "issued by an agency *to advise the public* of the agency's construction of the statutes and rules which it administers." *Shalala v. Guernsey Memorial Hosp.*, 514 U.S. 87, 99 (1995) (quoting *Chrysler*

13

*Corp. v. Brown*, 441 U.S. 281, 302 n. 31 (1979) (quoting the *Manual on APA* at 30 n.3)). The *TVA Membership in External Organizations* policy, in contrast, advises the CEO and TVA Board, not the public. The preamble to the *Board Practices* system provides that the practices set out therein are "*to provide guidance to Board Members or the [CEO]*" and the *TVA Membership in External Organizations* in particular provides that it is intended to "*provid[e] more definitive guidance to the CEO* as to limitations that should be applicable to TVA's participation in external organizations." (*Bd. Practices*, Doc. 15-3 at PageID##115, 129.) Thus, TVA's policy is intended to provide guidance to internal agency personnel at TVA (the CEO and the TVA Board) of the existing rules pertaining to TVA's membership in external organizations. It is therefore not an interpretive rule intended to provide any direction, information, or guidance to individuals *outside* the agency about a rule to which they are subject.

Nor does the *TVA Membership in External Organizations* policy "prescribe" law or policy. 5 U.S.C. § 551(4). The APA does not define the term "prescribe;" however, Black's Law Dictionary states that prescribe means "[t]o dictate, ordain, or direct; to establish authoritatively (as a rule or guideline)." Black's Law Dict. (11th ed. 2019) (defining "prescribe"). The *TVA Membership in External Organizations* policy is, by its express terms, "guidance," is non-binding, and does not alter the law or commit TVA or anyone else to a particular course of action. (*See Bd. Practices*, Doc. 15-3 at PageID#129.) TVA's policy does not dictate, ordain, direct, or establish authoritatively what actions TVA or any other individual *must* take at all. *See, e.g., Fund for Animals v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 20 (D.C. Cir. 2006) (the budget proposal does not "implement, interpret, or prescribe law or policy" but is a "useful planning document" and "outlines the goals and methods of an administrative program"). Rather, the *TVA Membership in External Organizations* policy simply states what the CEO and the TVA Board should consider

14

regarding TVA's participation in external organizations. *See Indep. Equip. Dealers Ass'n*, 372 F.3d at 428 (holding that an agency letter was not a "rule" because "[b]y restating [the agency's] established interpretation of the certificate of conformity regulation, the [agency's letter] tread no new ground. It left the world just as it found it, and thus cannot be fairly described as implementing, interpreting, or prescribing law or policy.").**13**

### C. The term "rule" in § 553(e) encompasses substantive rules, not general statements of agency policy.

Plaintiffs admit in their Opposition that notice and comment rule making does *not* apply to "interpretive rules, general statements of policy, or rules of agency organization, procedure or practice." (Opp., Doc. 21 at PageID##433-34; *see also* TVA Reply, Doc. 23 at PageID##497-98 (rulemaking under § 553(e) of the APA only applies to substantive or legislative rules)). Plaintiffs argue, nonetheless, that the term "rule" in § 553(e) refers to something more than just substantive rules. (*See* Opp. Doc. 21 at PageID#434.) Adopting Plaintiffs' almost unlimited definition of a rule would create an untenable and illogical situation: agencies would be obligated to engage in rule

---

**13** The proposed rule Plaintiffs demand TVA issue—a new subsection to 18 C.F.R. § 1315.100—also does not constitute a "rule" within the meaning of the APA. Part 1315 of Title 18 of the Code of Federal Regulations limits the use of *appropriated* funds, it does not relate to TVA's funds that are derived from the sale of electricity. It also does not relate to TVA's "organization, procedure, or practice requirements," 5 U.S.C. § 551(4), but rather to congressionally created principles used by a wide variety of agencies and agency personnel in addition to TVA, to restrict certain, appropriated funds from being used for lobbying. *See* New Restrictions on Lobbying, 55 Fed. Reg. 6736-01 (Feb. 26, 1990); *see also* Government-wide Guidance for New Restrictions on Lobbying, 54 Fed. Reg. 52306-01 (Dec. 20, 1989) ("Section 1352 required the Director of the Office of Management and Budget (OMB) to issue governmentwide guidance for agency implementation of, and compliance with, the requirements of this section. The Conference Report indicated that the conferees "expect that all agencies shall expeditiously promulgate regulations to implement the requirements of this section, and that all such regulations shall be uniform and shall comply with the government-wide guidance issued by the Office of Management and Budget pursuant to paragraph (b)(7). Also, major agencies, as designated by OMB, shall issue a common rule complying with the guidance issued by OMB.").

15

making procedures, whether issuing a rule or explaining why the agency was not issuing a rule, to countless petitions containing requests for whatever the petitioners might call a "rule."

And Plaintiffs' unprincipled attempt to expand the definition of a "rule" runs afoul of well-established case law holding that a "rule" does *not* encompass a non-binding statement of agency policy or guidance. *See Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 95 (D.C. Cir. 2002) ("We have recognized that notwithstanding the breadth of the APA's definition [of a rule] an agency pronouncement that lacks the firmness of a proscribed standard—particularly certain policy statements—is not a rule"); *Indep. Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1257 (D.C. Cir. 1996) (a policy statement that "does not purport to, nor is it capable of, binding the agency" is "not an agency rule at all, legislative or interpretative"); *Pac. Lighting Serv. Co. v. Fed. Power Comm'n*, 518 F.2d 718, 719 (9th Cir. 1975) (per curiam) (holding that the challenged order was "a statement of Commission policy, and not a 'rule'"); *Pac. Gas & Elec. Co. v. Fed. Power Comm'n*, 506 F.2d 33, 38 (D.C. Cir. 1974) ("A general statement of policy is the outcome of neither a rulemaking nor an adjudication; it is neither a rule nor a precedent but is merely an announcement to the public of the policy which the agency hopes to implement in future rulemakings or adjudications."); *Ctr. for Envtl. Health v Vilsack*, No. 15-cv-01690-JSC, 2016 WL 3383954, at *7-*8 (N.D. Cal. June 20, 2016) (distinguishing a "general statement of policy" from a "rule").[14] Accordingly, the APA refers to "substantive *rule[s]*, "interpretative *rules*," and "*rules*

---

[14]     *Syncor International Corporation v. Shalala* explains that in "a policy statement, an agency simply lets the public know its current enforcement or adjudicatory approach. The agency retains the discretion and the authority to change its position—even abruptly—in any specific case because a change in its policy does not affect the legal norm." 127 F.3d 90, 94 (D.C. Cir. 1997); *see Azar v. Allina Health Servs.*, 139 S.Ct. 1804, 1810 (2019) (favorably citing and applying *Syncor's* description). Policy statements are not legislative rules or "really any rule." *Syncor*, 127 F.3d at 94.

of agency organization, procedure, or practice," but never uses the term "rule" in its description of a "general statement of policy." *See* 5 U.S.C. § 553(b)(3)(A), (d). Because the *TVA Membership in External Organizations* policy is a general statement of policy, it is not a "rule."

Plaintiffs cite *Air Brake Systems v. Mineta* ("*Mineta*"), 202 F. Supp. 2d 705, 711 (E.D. Mich. 2002), for the proposition that a "rule" includes "virtually every statement an agency may make." (Opp., Doc. 21 at PageID#433.) But the actual holding of *Mineta* was that letters issued by the National Highway Traffic Safety Administration ("NHTSA") did not constitute rule making within the meaning of § 551(4) because the letters "do not prescribe or implement law or policy, but rather describe the operation of an existing rule." *Id.*, 202 F. Supp. 2d at 713.[15]

Indeed, far from supporting Plaintiffs' argument that almost every statement an agency makes establishes a "rule," *Mineta* holds just the opposite—that every agency statement is not a rule. *Id.* ("Nor do the letters constitute rule making within the meaning of 5 U.S.C. § 551(4) (defining "rule"). They do not prescribe or implement law or policy, but rather describe the operation of an existing rule.") The *Mineta* court also observed that "courts are not willing to allow judicial review of all agency statements." *Id.* at 711. And as now-Chief Justice Roberts opined, Congress has not given courts the authority to "exercise 'judicial review [over] everything done by an administrative agency.'" *Indep. Equip. Dealers Ass'n*, 372 F.3d at 427.

---

[15]    In *Mineta*, in addition to finding that the NHTSA letters did not constitute rule making subject to judicial review under the APA, the district court also concluded that the letters were not final agency actions from "which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id.*, 202 F. Supp. 2d at 711 (quoting *Bennett*, 520 U.S. at 177-78); *see also id.* at 713 (stating that the letters are not final agency actions because they are advisory in nature and have no legal effect).

17

**D.** **The *TVA Membership in External Organizations* policy is a general statement of agency policy and therefore not subject to APA rule making procedures.**

The key distinguishing factor between "a rule or a general statement of policy is the extent to which the challenged [directive] leaves the agency . . . free to exercise discretion to follow, or not to follow, the [announced] policy in an individual case." *Sacora v. Thomas*, 628 F.3d 1059, 1069 (9th Cir. 2010) (citation omitted). The *TVA Membership in External Organizations* policy is not binding and does not create any legal rights or obligations for TVA or any third parties. Policy statements—like TVA's—are binding on neither the public, *see Pac. Gas & Elec. Co. v. FPC*, 506 F.2d 33, 38–39 (D.C. Cir.1974), nor the agency, *see Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 537–39 (D.C.Cir.1988). Thus, the primary distinction between a substantive rule and a statement of policy, turns on whether an agency intends to bind itself to a particular legal policy position. *United States Tel. Ass'n v. FCC*, 28 F.3d 1232, 1234 (D.C. Cir. 1994). Here, TVA's policy takes no such stance and, therefore, fits the definition of a general statement of policy.

Accordingly, because the subject of Plaintiffs' Petition, the *TVA Membership in External Organizations* policy, is a general agency policy and not a "rule" within the meaning of the APA, Plaintiffs' Petitions is not a valid petition for rule making and TVA therefore had no duty to act in response to it. *See supra Ctr. for Biological Diversity v. Bernhardt*, 509 F. Supp. 3d at 1265-66.[16]

---

[16]     Even if the Court were to find the *TVA Membership in External Organizations* policy is an interpretative rule, it would still *not* be subject to the APA's notice-and-comment requirements. *See* 5 U.S.C. § 553(d)(2) (notice-and-comment procedure not required for "interpretative" rules); *First Nat. Bank of Lexington, Tenn. v. Sanders*, 946 F.2d 1185, 1188 (6th Cir. 1991); 5 U.S.C. § 553(b)(3)(A); (*see* Opp., Doc. 21 at PageID##433-34 (agreeing that interpretative rules are not subject to rule making procedures)). An interpretative rule merely "clarifies" a statutory or regulatory term or "reminds" parties of existing statutory or regulatory duties, while a substantive rule is a rule that creates law. *First Nat'l Bank v. Sanders*, 946 F.2d at 1188-89 ("For purposes of the APA, substantive rules are rules that create law," while in contrast

18

## IV. Plaintiffs Are Not Entitled to Summary Judgment Because They Have Failed to Establish Standing

### A. Plaintiffs have failed to establish organizational standing.

Plaintiffs may bring suit only if their "members would otherwise have standing to sue in their own right." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Article III's first element—injury-in-fact—requires an organizational plaintiff to "allege that it suffered a 'concrete and demonstrable injury to [its] activities—with the consequent drain on[its] resources—[that] constitutes far more than simply a setback to [its] abstract social interests.'" *Tex. Low Income Housing Info. Serv. v. Carson*, 427 F. Supp. 3d 43, 52 (D.C. Cir. 2019) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). To meet this standard, Plaintiffs must plausibly allege "that the defendant's action or omission to act injured the organization's interest." *PETA v. U.S. Dept. of Agric.*, 797 F.3d 1087, 1094 (D.C. Cir. 2015).

On behalf of Plaintiff Center for Biological Diversity (the "Center"), Plaintiffs claim that TVA's alleged failure to "provide a complete and legally sufficient response" to the Petition is "denying the Center information to which the Center is statutorily entitled" and that "[i]f TVA were to grant the Petition, TVA would no longer fund groups engaged in these advocacy activities contrary to the Center's environmental protection goals." (Galvin Decl., Doc. 21-1 at PageID#185, ¶ 6; Tait Decl., Doc. 20-10 at PageID#412, ¶ 5.) This claim of an informational injury fails for the reasons stated in TVA's reply in support of TVA's motion to dismiss (TVA Reply, Doc. 23 at PageID##499-502), and it is also a claim of a procedural right *in vacuo* which, as explained in

---

"[i]nterpretive rules merely clarify or explain existing law or regulations and go to what the administrative officer thinks the statute or regulation means.") (quotations and citations omitted). "[I]nterpretive rules" reflect "'the agency's construction of the statutes and rules which it administers.'" *Perez v. Mortgage Bankers Ass'n,* 135 S. Ct. 1199, 1204 (2015) (quoting *Shalala,* 514 U.S. at 99).

19

TVA's main brief in support of its motion to dismiss, is insufficient to create Article III standing. (TVA Br., Doc. 15 at PageID88 n.23 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)); *see also Friends of Tims Ford v. TVA*, 585 F.3d 955, 968-69 (6th Cir. 2009) (no standing because plaintiff failed to connect the procedural harm alleged in the complaint to specific harm threatening the plaintiff's members).[17]

Assuming, *arguendo,* that Plaintiffs' claim of an informational injury was sufficient, Plaintiffs' claim that this alleged injury would be averted if TVA were to grant the Petition fails the redressability prong of Article III. Even if Plaintiffs were to receive the requested relief and TVA was ordered to provide a "meaningful response" to the Petition (*see* Compl., Doc. 1 at PageID#19), TVA would not be required to enact the new rule proposed by Plaintiffs, and groups with whom TVA participates through contracts and membership agreements would not likely (or necessarily) alter their conduct based on any new regulation. In short, Plaintiffs have not shown that a favorable decision for Plaintiffs in this lawsuit is substantially likely to redress Plaintiffs' alleged injury. *See Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020) ("To establish Article III redressability, the plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award."); *see also Cmty. for Creative Non-Violence v. Pierce*, 814 F.2d 663, 670 (D.C. Cir. 1987). Moreover, Plaintiffs

---

[17]    Denial of a petition does not automatically confer Article III standing. *See Sturgeon v. Masica*, 768 F.3d 1066, 1075 (9th Cir. 2014) (denial of a rulemaking petition does not automatically confer standing), *vacated and remanded on other grounds sub nom. Sturgeon v. Frost*, 136 S. Ct. 1061 (2016); *see also Gettman v. DEA*, 290 F.3d 430, 433 (D.C. Cir. 2002) (holding that "the grant of a procedural right alone cannot serve as the basis for Article III standing unless the procedures in question are designed to protect some threatened concrete interest of [petitioner's] that is the ultimate basis of his standing") (alteration in original) (citing *Fund Democracy, LLC v. SEC*, 278 F.3d 21, 27 (D.C. Cir. 2002)); *see also Hydro Investors, Inc. v. FERC*, 351 F.3d 1192, 1197 (D.C. Cir. 2003); *Shipbuilders Council of Amer. v. United States*, 868 F.2d 452, 456 n. 3 (D.C. Cir. 1989).

20

acknowledge that the relief they are seeking in this action is not an order asking the Court to grant the Petition and enact the proposed rule. (*See* Opp., Doc. 21 at PageID#440.) Accordingly, there is no nexus between Plaintiffs' claim that their injury will be redressed by TVA granting the Petition and this claimed injury.

Plaintiffs also claim to have been "actively engaged in advocacy concerning" TVA and "involved in a broader advocacy effort concerning these important questions of compelled ratepayer funding for industry associations and other outside groups" so that "if TVA were to explain the bases for denying the Petition, the Center would be able to determine how to move forward most effectively" to address the concerns of its members. (Galvin Decl., Doc. 21-1 at PageID#208-09, ¶¶ 3, 4, 6; Tait Decl., Doc. 20-10 at PageID#412 ¶ 5.) These allegations confirm that Plaintiffs' allegations of injury amount to pure issue advocacy, the very type of activity distinguished in *Havens* as not sufficient to show injury-in-fact under Article III. *Id.* at 455 U.S. at 379. Plaintiffs' organizations' self-described missions include "working against utility efforts" (Tait Decl., Doc. 20-10 at PageID#411, ¶ 3), and "seeking to address TVA's costs on outside groups engaged in advocacy that undermines public health and environmental protections" (Gait Decl., Doc. 21-1 at PageID#208, ¶ 3). Plaintiffs' declarations do not claim that Plaintiffs are unable to conduct these missions due to TVA's alleged failure to "meaningfully" respond to the Petition. The failure to allege harm to their missions or the conduct of their business is fatal to their claim of standing.[18] Thus, for the reasons stated herein and in TVA's pending motion to dismiss, Plaintiffs have failed to establish organizational standing.

---

[18] The declarations of Plaintiffs' organizational plaintiffs do not remedy the deficiencies identified in TVA's main brief concerning Plaintiffs' claim to organizational standing. (TVA Br., Doc. 15 at PageID##87-89.) There, TVA described what Plaintiffs must show to connect their missions to alleged harm, such as showing that TVA's actions impaired Plaintiffs' ability to

**B.      Plaintiffs have failed to establish associational standing.**

Plaintiffs' injury-in-fact arguments of their individual members are equally deficient. The substantive injury contained in the new declarations from Plaintiffs' individual members is that TVA's funding of external organizations causes injury to Plaintiffs' members because the "costs TVA incurs to fund these outside groups are inevitably passed along to ratepayers" causing economic injuries to Plaintiffs' members. (Opp., Doc. 21 at PageID##443-44.) The standing allegations of Douglas Finnan, a member of the Center, are representative of the allegations of the other member declarations:

> I pay my electricity bill to Knoxville Utility Board (KUB), a local power company of [TVA]. My utility collects electricity bill payments on behalf of TVA, and I am a TVA ratepayer. Over the past year, I have paid more than $1,800 for electricity.
>
> . . . .
>
> The Petition details how the Edison Electric Institute, to which TVA has paid millions of dollars, lobbies against renewable energy policies, supports political activities, and opposes [EPA] regulations important to protecting air and water quality.
>
> . . . .
>
> My ratepayer dollars should not be used to financially support these groups, but the Petition shows that VTA regularly spends my money to fund these groups that engage in these political activities directly contrary to my values and my interests[.]

(Finnan Decl., Doc. 20-3 at PageID#396-97, ¶¶ 4, 10, 11.)

Accepting the veracity of Mr. Finnan's allegations for the sake of argument—that a payment by a ratepayer for a service (i.e., the provision of electricity by a local power company that purchases electricity from TVA) could constitute an economic injury—such an "injury" is no different than that which is experienced by the general ratepaying population in TVA's seven-state

---

provide services or inhibited their daily organizations. Plaintiffs fail to allege in their declarations that the work of their organizations has been hampered in any substantive, identifiable way.

service territory who also pay local power companies for electricity supplied by TVA. If the Court accepts Plaintiffs' theory of injury—that Plaintiffs' members have suffered an injury-in-fact for Article III purposes because portions of the revenue derived from Plaintiffs' electricity bills ultimately reaches external organizations with whom Plaintiffs disagree—the possibilities for actions based on this theory are virtually endless as TVA does not pretend that each of its ratepayers shares TVA's interests, or the interests of Plaintiffs. This allegation of generalized harm fails to establish standing.

"[T]he Supreme Court has made it clear that when the asserted harm is a generalized grievance shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Apache Bend Apartments, Ltd. v. United States ex rel. IRS,* 987 F.2d 1174, 1178 (5th Cir. 1993) (internal quotation marks omitted). Moreover, Plaintiffs' alleged economic injuries, at their core, implicate broader political and policy-based decisions, which are "more appropriately addressed in the representative branches." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004), *abrogated on other grounds by Lexmark Int'l, Inc., v. Static Control Components,* 572 U.S. 118 (2014).

### C.   Plaintiffs lack standing under the "zone of interest" test.

Plaintiffs' lack of a concrete injury-in-fact is underscored by the "zone of interests" test, which courts in this Circuit have recognized is applicable when analyzing APA claims. A plaintiff pursuing an APA claim must show that "the interests he or she seeks to protect, 'is arguably within the zone of interests to be protected [] by the statute' under which the plaintiffs sues." *Bangura v. Hansen*, 434 F.3d 487, 499 (6th Cir. 2006) (citation omitted). Here, Plaintiffs have identified no statute—besides the APA—establishing any such interest. *See supra* Part I. The APA alone cannot supply Plaintiffs' zone of interest.

The Ninth Circuit in *Oregon Natural Resources Council v. Thomas* described a similar situation:

> This suggests another problem with plaintiffs' free-standing APA "arbitrary and capricious" claims. To have standing under APA § 702, a claimant must show he "suffer[ed] legal wrong because of agency action, or [was] adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702 (emphases added); *see also* III Kenneth C. Davis & Richard J. Pierce, Jr., Administrative Law Treatise, § 16.9 at 53 (3d ed. 1994) (APA § 702 "require[s] reference to other statutes—agency organic acts—to determine whether a petitioner has standing to obtain review of an action to which the APA applies."). As plaintiffs' "arbitrary and capricious" claims don't invoke any other statute, plaintiffs have no standing to raise them under section 702.

*Id.*, 92 F.3d at 798 n.11. As discussed above, *supra* Part I, despite § 702's requirement that a plaintiff suffer or be affected by an agency action "within the meaning of the relevant statute," Plaintiffs have failed to identify any "relevant statute" besides the APA. As such, having rooted their action in no relevant statute besides the APA, Plaintiffs are unable to identify any possible zone of interest and therefore lack standing for this reason as well.

## CONCLUSION

For the reasons set forth above, as well as in TVA's pending motion to dismiss, the Court should deny Plaintiffs' summary judgment motion (Doc. 20), grant TVA's motion to dismiss (Doc. 14), and dismiss Plaintiffs' Complaint (Doc. 1).

24

Respectfully submitted,

*s/Lane E. McCarty*
David D. Ayliffe
Director, Litigation
Lane E. McCarty
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.2396
lemccarty@tva.gov

Attorneys for Tennessee Valley Authority

109235748

25

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically through the Court's ECF system on the date shown in the document's ECF footer. Notice of this filing will be sent by operation of the Court's ECF system to all parties as indicated on the electronic filing receipt. Parties may access this filing through the Court's ECF system.

_s/Lane E. McCarty_
Attorney for Tennessee Valley Authority

1