UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

CENTER FOR BIOLOGICAL DIVERSITY, )
ALABAMA CENTER FOR                )
SUSTAINABLE ENERGY d/b/a/         )
ENERGY ALABAMA,                   )
APPALACIAN VOICES,                )
SOLAR UNITED NEIGHBORS,           )
SOUTHERN ALLIANCE FOR             )
CLEAN ENERGY, and                 )
SOWING JUSTICE,                   )
                                  )
            Plaintiffs,           )
                                  )
v.                                )        No.:   3:21-CV-319-TAV-DCP
                                  )
TENNESSEE VALLEY AUTHORITY,       )
                                  )
            Defendant.            )

## MEMORANDUM OPINION

Before the Court is defendant Tennessee Valley Authority's ("TVA") motion to dismiss [Doc. 14] and plaintiffs' motion for summary judgment [Doc. 20]. With respect to the motion to dismiss, plaintiffs filed a response [Docs. 21, 22],[1] and TVA filed a reply [Doc. 23]. With respect to the motion for summary judgment, TVA filed a response [Doc. 27], and plaintiffs filed a reply [Doc. 29]. These motions are ripe for resolution. For the reasons stated below, TVA's motion to dismiss [Doc. 14] will be **GRANTED** and plaintiffs' motion for summary judgment [Doc. 20] will be **DENIED**.

---

[1] Plaintiffs' response is also their memorandum in support of their motion for summary judgment.

# I.    Background

Plaintiffs are a collection of national and regional nonprofit organizations that support environmental causes and conversion to renewable energy [Doc. 1 ¶¶ 10–21]. TVA is a United States agency created pursuant to the Tennessee Valley Authority Act of 1933, 16 U.S.C. § 831 *et seq.* [*Id.* ¶ 22]. "TVA is the nation's largest public power provider," and it provides electricity primarily through local power companies that sell TVA's power to retail customers [*Id.* ¶¶ 29–30]. TVA is funded by revenues it generates from selling electricity [*Id.* ¶ 31]. TVA is governed by a board of directors, and the directors are each appointed by the President and confirmed by the Senate. 16 U.S.C. § 831a.

In February 2020, a number of organizations (the "Petitioners") submitted to TVA a rulemaking petition (the "Petition"), pursuant to the Administrative Procedure Act (the "APA") [Doc. 1 ¶¶ 32–33; Doc. 15-1]. The Petition details alleged anti-environmental advocacy and other lobbying of various outside groups [Doc. 15-1 pp. 5–12]. Moreover, the Petition asserts that TVA financially supports these groups by paying millions of dollars in membership dues and fees which these groups use to engage in controversial lobbying activity and litigation [*Id.* at 13–14]. The Petition claims that, given the outside groups' "controversial activities, TVA's financial support contravenes both TVA's statutory mission and ratepayers' First Amendment rights" [Doc. 1 ¶ 34; *see also* Doc. 15-1 pp. 3–4, 14–21]. Thus, the Petition requests that TVA adopt a regulation prohibiting TVA from providing funds to any outside group that "engages in litigation related to . . . governmental

2

activities," "attempts to influence legislative or executive action," or "makes political contributions" [Doc. 20-1 p. 67].

On May 21, 2020, TVA sent a letter (the "TVA Letter") to plaintiff Center for Biological Diversity stating that "TVA works with a variety of organizations to fulfill its mission and comply with its legal responsibilities" [Doc. 15-2 p. 1].[2] The TVA Letter asserts that TVA holds memberships with outside groups and that "the collective expertise and experience" these groups offer "cannot otherwise be replicated" and contribute to TVA's operational and economic efficiency [*Id.*]. While the TVA Letter acknowledges the Petitioners' interest in TVA, it does not mention the Petition or the requested regulation [*Id.* at 1–2].

Accordingly, plaintiffs filed their complaint, which asserts two APA claims against TVA on their own institutional behalves as well as on the behalves of their members [Doc. 1 ¶¶ 10–21, 68–77]. First, plaintiffs claim the TVA Letter is an inadequate response to the Petition and thus an "arbitrary and capricious agency action" in violation of the APA [*Id.* ¶¶ 68–72]. Second, plaintiffs assert that TVA has "unreasonably delayed agency action" in violation of the APA because the APA requires TVA to respond within a reasonable time, yet TVA "has neither granted the Petition, nor informed Petitioners that the Petition is denied" [*Id.* ¶¶ 73–77]. *Inter alia*, plaintiffs seek a court order

---

[2] "In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction[.]" *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003).

3

finding TVA in violation of the APA and directing "TVA to provide a meaningful response . . . ." [*Id.* at 19].

## II.    Standard of Review

TVA moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of standing and thus lack of jurisdiction [Doc. 14].[3] "Unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court need not convert a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) into one for summary judgment when materials outside the pleadings are considered." *See Johnson v. Bredesen*, 356 F. App'x 781, 783 (6th Cir. 2009). Attacks to standing may be facial or factual. A facial attack is one arguing that the complaint does not plausibly demonstrate standing exists. *Ass'n of Am. Physicians & Surgeons v. United States FDA*, 13 F.4th 531, 543 (6th Cir. 2021). When analyzing a facial attack, the court must accept the plaintiff's allegations regarding standing as true and determine whether the plaintiff has asserted a plausible claim that it has standing. *Id.* at 543–44.

On the other hand, a factual attack to standing challenges "the factual existence of" standing. *Van Vleck v. Leikin, Ingber & Winters, P.C.*, No. 20-11635, 2021 WL 1212702, at *1 (E.D. Mich. Mar. 31, 2021). When the plaintiff relies on matters outside the pleadings to demonstrate standing, the challenge is factual, and the court must "assess the factual basis for [standing] by weighing the evidence tendered." *Id.* The plaintiff bears the burden

---

[3] Because the Court concludes that plaintiffs do not have standing to maintain this action, the Court does not reach the merits of plaintiffs' claims and thus limits its standard of review to consideration of TVA's motion to dismiss, which raises the standing issue.

4

to demonstrate that standing exists. *Binno v. ABA*, 826 F.3d 338, 344 (6th Cir. 2016). Because plaintiffs rely on declarations of their executives and members to demonstrate standing, TVA's standing challenge is a factual attack, and the Court will therefore consider whether plaintiffs' declarations demonstrate standing.[4]

## III. Analysis

While the complaint presents claims under the APA, a court has no authority to consider the merits of a case if the plaintiff lacks standing to present its claims. *See Binno*, 826 F.3d at 344. Therefore, the Court will first consider whether plaintiffs have adequately demonstrated standing.

Federal courts may only adjudicate "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). A case or controversy exists only if the plaintiff has a "personal stake" in the outcome of a dispute, that is, if the plaintiff has standing to present its claims. *TransUnion*, 141 S. Ct. at 2203. To demonstrate standing, the plaintiff must show: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* In

---

[4]  When TVA submitted its motion to dismiss, TVA's challenge was arguably facial because plaintiffs had submitted no evidence in support of standing at that time. However, given that plaintiffs have now moved for summary judgment and presented evidence to demonstrate standing, the Court will treat TVA's standing challenge as a factual attack.

In any event, the Court would find plaintiffs lack standing even considering TVA's challenge as facial. Specifically, the complaint alleges plaintiffs and their members have suffered the same harms that plaintiffs' affiants allege they have suffered in their declarations. Thus, on a facial attack, the Court would find the complaint fails to plausibly demonstrate standing for the same reasons discussed *infra* with respect to TVA's factual challenge [*See* Doc. 1 ¶¶ 10–21].

5

light of separation of powers principles, the standing inquiry is "especially rigorous" when actions involving the political branches are at issue. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

The primary issue in this case is whether plaintiffs have demonstrated a sufficient injury. An injury is constitutionally sufficient only if it is "'concrete'—that is, 'real, and not abstract.'" *TransUnion*, 141 S. Ct. at 2204 (quoting *Spokeo v. Robins*, 578 U.S. 330, 340 (2016)). While a tangible injury such as personal or property harm qualifies as a sufficient injury-in-fact, "an intangible injury may be concrete if it 'has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" *Polyweave Packaging, Inc. v. Buttigieg*, No. 4:21-CV-54, 2021 WL 4005616, at *3 (W.D. Ky. Sept. 1, 2021) (quoting *Spokeo*, 578 U.S. at 340–41). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion*, 141 S. Ct. at 2204. However, "[a] common-law or historical analogue need not be an 'exact duplicate' to make this showing." *Ward v. Nat'l Patient Acct. Servs. Sols.*, 9 F.4th 357, 362 (6th Cir. 2021) (quoting *TransUnion*, 141 S. Ct. at 2209). Congress's decision to provide a private right of action is "instructive" as to whether a sufficiently concrete injury has occurred; however, a violation of a statutory right alone does not create a constitutional injury. *TransUnion*, 141 S. Ct. at 2204–05.

Additionally, a plaintiff's injury must be "particularized." *Gerber v. Herskowitz*, 14 F.4th 500, 505–06 (6th Cir. 2021). "To qualify as particularized, an injury 'must affect the plaintiff in a personal and individual way,' . . . not in a general manner that affects the

6

entire citizenry." *Id.* (citation omitted). However, "[t]he fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance." *Spokeo*, 578 U.S. at 339 n.7.

Plaintiffs rely on two bases to demonstrate standing, both relating to the injury-in-fact requirement. First, plaintiffs argue they have organizational standing because TVA has caused their organizations informational harm by violating their statutory right to an adequate response to the Petition. Second, plaintiffs aver they have associational standing because TVA has caused their members economic and First Amendment harm by using the members' rate payments in a manner with which they disagree. The Court considers each proffered basis in turn.[5]

### A. Organizational Standing and Informational Harm

Plaintiffs argue they have organizational standing because they have a statutory right to receive information under the APA via an adequate response to the Petition and TVA's failure to respond therefore causes them cognizable informational injury [Doc. 21 pp. 23–24; Doc. 29 pp. 15–16]. TVA argues that plaintiffs lack organizational standing because plaintiffs have not demonstrated that TVA's conduct impaired their ability to provide services or that plaintiffs expended resources to avoid the alleged harm [Doc. 15 pp. 24–25]. Moreover, TVA contends that plaintiffs' alleged informational injury is

---

[5] Because the Court concludes that plaintiffs have failed to demonstrate a justiciable injury, the Court need not consider whether plaintiffs have established causation or redressability. *But see* fn. 10, *infra* (briefly addressing redressability as to plaintiffs' claim of associational standing). Equally, the Court need not consider TVA's alternative argument that plaintiffs fail the "zone of interest" test for standing [*See* Doc. 27 pp. 26–27].

insufficient because no statute requires TVA to provide a response, and regardless, plaintiffs have not demonstrated how TVA harms plaintiffs by failing to provide a response or how Congress specifically intended to prevent such harm [Doc. 23 pp. 15–18].

An organization has standing to maintain a lawsuit on its own behalf if "it has suffered a palpable injury as a result of the defendant['s] actions." *Protect Our Aquifer v. TVA*, 554 F. Supp. 3d 940, 950 (W.D. Tenn. 2021) (quoting *MX Group Inc. v. City of Covington*, 293 F.3d 326, 332–33 (6th Cir. 2002)). Thus, an organization has standing only if it demonstrates that it meets the three elements of standing set forth *supra*. *Shelby Cnty. Advocs. for Valid Elections v. Hargett*, No. 2:18-CV-2706, 2019 WL 4394754, at *5 (W.D. Tenn. Sept. 13, 2009) (citing *Fair Elections Ohio v. Husted*, 770 F.3d 456, 459–60 (6th Cir. 2014)). In addition, "an organization must establish 'that its ability to further its goals has been 'perceptibly impaired' so as to constitute far more than simply a setback to the organization's abstract social interests.'" *Miami Valley Fair Hous. Ctr., Inc. v. Preferred Real Est. Invs., LLC*, No. 2:15-CV-2737, 2017 WL 914735, at *3 (S.D. Ohio Mar. 8, 2017) (quoting *Greater Cincinnati Coal. for the Homeless v. City of Cincinnati*, 56 F.3d 710, 716 (6th Cir. 1995)). To satisfy this standard, the organization must allege that it has suffered a "'demonstrable injury to the organization's activities' and a 'consequent drain on the organization's resources.'" *League of Voters of Mich. v. Johnson*, 352 F. Supp. 3d 777, 801 (E.D. Mich. 2018) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)); *see also Online Merchs. Guild v. Cameron*, 995 F.3d 540, 547 (6th Cir. 2021) (stating that an organization has standing only if it demonstrates that the

8

"purportedly illegal action increases the resources the group must devote to programs independent of its suit challenging the action" (internal quotation marks omitted)).

The Court finds that plaintiffs have not demonstrated that they have suffered organizational harm. Plaintiffs have failed to provide evidence that their organizations have expended or diverted resources—whether time, money or otherwise—as a result of TVA's conduct. *Compare League of Voters of Mich.*, 352 F. Supp. 3d at 811–12 (Quist, J., concurring in part and dissenting in part) (suggesting an organization should not have standing when it did not expend or divert resources to support its mission as a result of the defendant's action and therefore the organization's harm was a mere setback to its "abstract social interests"), *with Havens*, 455 U.S. at 379 (finding a plaintiff demonstrated standing when the plaintiff organization "devote[d] significant resources to identify and counteract the defendant's" misconduct such that there was a "consequent drain on the organization's resources" which "constitute[d] far more than simply a setback to the organization's abstract social interests"), *and Mote v. City of Chelsea*, 284 F. Supp. 3d 863, 887–88 (E.D. Mich. 2018) (finding an organization demonstrated standing when it presented testimony that it diverted resources away from other services to assure the defendants' compliance with the Americans with Disabilities Act). Moreover, plaintiffs have not provided evidence indicating that TVA's failure to provide a response has materially affected their activities. For example, plaintiffs have not adduced evidence demonstrating how TVA's failure to provide an adequate response has impeded plaintiffs' efforts in furtherance of their missions. *See, e.g., Home Builders Ass'n of Lexington v. Lexington-Fayette Urb.*

9

*Cnty. Plan. Comm'n*, No. 5:19-CV-178, 2020 WL 2545323, at *4 (E.D. Ky. May 18, 2020) (finding the plaintiff did not have standing when it offered a mere "[c]oncern, without any concrete example of how" the defendant's actions caused a concrete injury).

Instead, plaintiffs provide affidavits from their executives stating that the Petitioners submitted the Petition because their organizations are "actively engaged in advocacy concerning" TVA and are "involved in a broader advocacy effort concerning . . . important questions of compelled ratepayer funding for . . . outside groups that regularly engage in anti-environmental advocacy activities" [Doc. 20-1 p. 1]. Moreover, plaintiffs' executives assert that "[i]f TVA were to grant the Petition, TVA would no longer fund [the outside groups, and conversely,] if TVA were to explain the bases for denying the Petition," plaintiffs could "determine how to move forward most effectively" [Doc. 20-1 p. 2; *see also* Doc. 20-10 p. 2]. However, plaintiffs' alleged advocacy interest is insufficient because plaintiffs have not provided evidence that they have expended resources or its mission has been impaired. *See Havens*, 455 U.S. at 379. Moreover, the conclusory assertions that TVA's conduct has prevented plaintiffs from "determin[ing] how to move forward most effectively" are not sufficiently definite to establish a concrete harm. *See Home Builders Ass'n of Lexington*, 2020 WL 2545323, at *4. In sum, plaintiffs lack standing because they have not demonstrated that TVA has "perceptibly impaired" their goals. *See Miami Valley Fair Hous. Ctr.*, 2017 WL 914735, at *3.

The Court further finds that plaintiffs do not have organizational standing based on the allegation that TVA violated their statutory right to information under the APA by

10

failing to respond to the Petition [Doc. 21 pp. 22–24; Doc. 29 pp. 15–16]. However, before the Court explains its reasoning, it is necessary to examine the Supreme Court's jurisprudence regarding the relationship between statutory violations and informational harm.

In two cases that plaintiffs cite, the Supreme Court suggested that a violation of a statutory right to information can sometimes suffice to cause an Article III injury. First, in *Public Citizen v. United States Department of Justice*, 491 U.S. 440 (1989), an American Bar Association ("ABA") committee, acting through the Department of Justice ("DOJ"), conducted investigations into and completed reports regarding potential judicial nominees, which the ABA kept confidential. *Id.* at 443–45. The plaintiffs sued the DOJ when the ABA refused to provide the plaintiffs with the names of potential nominees, the reports, and minutes from the committee's meetings. *Id.* at 447. Specifically, the plaintiffs argued that the ABA committee was an "advisory committee" under the Federal Advisory Committee Act and therefore was statutorily required to publicly disclose the information requested. *Id.* at 446–47. The Supreme Court found the plaintiffs had standing. *Id.* at 451. The Court reasoned the plaintiffs suffered a sufficient injury because they had requested disclosure of the information and the ABA denied that request, emphasizing that plaintiffs requesting public information in similar cases had never been required to make a further showing. *Id.* at 449–50.

Next, in *Federal Election Commission v. Akins*, 524 U.S. 11 (1998), voters filed a complaint with the Federal Election Commission (the "FEC") arguing an organization was

11

a "political committee" under the Federal Election Campaign Act of 1971 and therefore was required to publicly disclose information regarding its membership and finances. *Id.* at 13–17. The FEC disagreed, reasoning that the organization's expenditures did not cause it to qualify as a "political committee." *Id.* at 18. The Supreme Court held the voters had standing to challenge the FEC's decision. *Id.* at 26. Citing *Public Citizen*, the Court reasoned that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Id.* at 21.

Subsequently, the Supreme Court, in *TransUnion*, 141 S. Ct. 2190, further analyzed the relationship between statutory violations and informational harm. In *TransUnion*, the plaintiffs requested information from a credit reporting agency that the agency was statutorily required to provide. *Id.* at 2200–01. While the agency provided the information, the agency did not do so in the form required by statute because it provided the information via multiple mailings, *id.* at 2201–02, 2213, and the plaintiffs sued based on this procedural violation. *Id.* at 2202. The Supreme Court held the plaintiffs did not have standing to present their claim because they failed to demonstrate that they suffered harm. *Id.* at 2213–14. The Court explained that an injury is constitutionally sufficient if it is a harm that was recognized at common law or has a common law analogue, and the Court made clear that Congress may not unilaterally create Article III injuries by providing statutory rights. *Id.* at 2204–05. Thus, because the plaintiffs failed to demonstrate any traditionally-recognized harm deriving from receiving their credit reports in an incorrect format, the Court found their alleged harms were insufficient as mere statutory violations. *Id.* at 2213. Moreover,

12

the Court distinguished *Public Citizen* and *Akins* because, unlike in those cases, the *TransUnion* "plaintiffs did not allege that they failed to receive any required information"; rather, "[t]hey argued only that they received it *in the wrong format*." *Id.* at 2214 (emphasis in original).

Thus, *Public Citizen* and *Akins* and their progeny establish that a plaintiff may sometimes suffer a sufficient injury based on a violation of a statutory right to information. And *TransUnion* appears to clarify that this violation alone does not per se create Article III harm; rather, the plaintiff must demonstrate the violation caused a discrete, traditionally-recognized Article III harm aside from the statutory violation. *See* Erwin Chemerinsky, *What's Standing After* TransUnion LLC v. Ramirez, 96 N.Y.U. L. Rev. Online 269, 270, 275–26 (2021), nyulawreview.org/online-features/whats-standing-after-transunion-llc-v-ramierz (citing *Akins* as a case basing standing on the violation of a statutory right to information and noting that *TransUnion*'s holding significantly narrows the breadth of standing); *see also TransUnion*, 141 S. Ct. at 2221 (Thomas, J., dissenting) (arguing that the majority opinion establishes that "[n]o matter if [a] right is personal or if the legislature deems the right worthy of legal protection, legislatures are constitutionally unable to offer the protection of the federal courts for anything other than money, bodily integrity, and anything else that this Court thinks looks close enough to rights existing at common law."). Another district court in this circuit has interpreted *TransUnion* similarly. *See Shumway v. Neil Hospitality, Inc.*, 570 F. Supp. 3d 585, 592 and n.2 (W.D. Tenn. 2021) (suggesting *Akins* is consistent with *TransUnion* because the harm in *Akins* was a

13

traditionally-recognized harm, noting that the FEC's withholding of information "impeded the plaintiffs' ability to exercise their voting rights—a critical and fundamental entitlement" and recognizing that any other interpretation would render *Akins* "incongruent with the Supreme Court's current standing jurisprudence.").

Accordingly, the Court disagrees with plaintiffs that Article III harm per se materialized when TVA failed to provide the requested response to the Petition. *See TransUnion*, 141 S. Ct. at 2205 ("Congress's creation of a statutory . . . obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm . . . ."); *see also Shumway*, 570 F. Supp. 3d at 593 ("[W]hether concrete harm exists under Article III is a determination left to the courts and defined by the bounds of the Constitution."). Indeed, scholarship suggests that after *TransUnion*, plaintiffs have no standing to raise non-economic APA claims for the reasons discussed. *See* Chemerinsky, *supra*, at 285 ("Unless the plaintiff can show an economic injury, there would not be standing to bring claims challenging violations of the APA.").

In any event, the Supreme Court also stated that, unlike *TransUnion*, both *Public Citizen* and *Akins* "involved denial of information subject to public-disclosure or sunshine laws that entitle *all members of the public* to certain information." *TransUnion*, 141 S. Ct. at 2205 (emphasis added). This language suggests that a violation of a statutory right to information may constitute sufficient harm only when the statute requires broad public disclosure of information to all (or at least numerous) members of the public. *See Casillas*

14

*v. Madison Ave. Assocs.*, 926 F.3d 329, 338 (7th Cir. 2019) (noting that *Akins* and *Public Citizen* involved "[p]ublic-disclosures laws—sometimes called 'sunshine laws'—[that] protect the public's interest in evaluating matters of" public concern, such as the right to vote in *Akins* and the right to participate in judicial selection in *Public Citizen*). Therefore, plaintiffs have no organizational standing because no statute requires TVA to publicly disclose the response that plaintiffs request; only plaintiffs would receive the response.[6]

Regardless, plaintiffs have not met their burden to demonstrate they suffered a constitutionally-sufficient injury. *TransUnion* and following Sixth Circuit precedent clarify that plaintiffs have the burden to demonstrate that the alleged harm is a traditionally-recognized Article III harm. *See Ward*, 9 F.4th at 362 ("To establish that the statutory violations here constitute concrete injury, [the plaintiff] must show that [its harm] resembles a harm traditionally regarded as providing a basis for a lawsuit." (citing *TransUnion*, 141 S. Ct. at 2204)). Here, plaintiffs only allege the APA entitles them to an adequate response to the Petition "and Plaintiffs are therefore injured by TVA's failure to comply with this statutory right to information" [Doc. 29 pp. 15–16]. Plaintiffs do not, however, allege that a violation of their right to a response is a traditionally-recognized harm, nor has the Court been made aware of any common-law analogue to plaintiffs'

---

[6] Plaintiffs cite *Ohio v. Raimondo*, 848 F. App'x 187 (6th Cir. 2021), for the proposition that Article III standing may derive from informational injury alone [Doc. 21 pp. 23–24]. The Court finds that *Raimondo* does not support a finding of standing. First, *Raimondo* was decided shortly before *TransUnion*. Moreover, *Raimondo* held that Ohio suffered an injury because the Secretary of Commerce failed to provide population data Ohio needed to engage in redistricting pursuant to the Census Act. 848 F. App'x at 188. However, like in *Public Citizen* and *Akins*, the Census Act required public disclosure of the population data to all states. *Id.*

15

alleged injury. *See Chemerinsky*, *supra*, at 285. For instance, plaintiffs' harm is not tangible harm such as physical, property, or monetary harm, and it is not any traditionally-recognized intangible harm, such as reputational harm, a violation of privacy, or extreme emotional distress. *See TransUnion*, 141 S. Ct. at 2204; *Gerber*, 14 F.4th at 506; *Ward*, 9 F.4th at 362. Accordingly, the Court finds that plaintiffs do not have organizational standing.

### B.    Associational Standing

Plaintiffs assert they have associational standing because their members are TVA's ratepayers who suffer economic and First Amendment harm when TVA uses revenue from its ratepayers to support outside groups that engage in activities with which the members disagree [Doc. 21 pp. 24–28]. TVA argues that the members' alleged injuries are conjectural, their arguments constitute generalized grievances that implicate separation of powers concerns, and they raise impermissible challenges to TVA's government speech [Doc. 15 pp. 25–27; Doc. 27 pp. 25–26]. Plaintiffs reply that their members' arguments are not generalized grievances because the members personally suffer economic harm and object to the use of their funds [Doc. 29 pp. 14–15].

In certain cases, an organization has standing to sue for injuries on behalf of its members even when the organization itself suffers no constitutionally-sufficient injury. *Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 537. Specifically:

> An organization may sue on behalf of its members if it shows that: (1) its "members would otherwise have standing to sue in their own right"; (2) the "interests" that the suit "seeks to protect are germane to the organization's

purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

*Id.* (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). To satisfy the first requirement, the organization must demonstrate that an identified member has suffered a concrete and particularized injury that the defendant caused and that the requested relief will redress. *Id.* at 543.

The Court finds that plaintiffs lack associational standing because they have not demonstrated that their members have suffered a sufficient injury-in-fact. As a preliminary matter, the parties debate whether the members have suffered any First Amendment harm. Specifically, the parties contest whether TVA's payments to the outside groups constitutes improper compelled subsidization of speech or government speech that is not subject to challenge. Plaintiffs discuss the Supreme Court's opinion in *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), in which the Court stated that "[b]ecause the compelled subsidization of private speech seriously impinges on First Amendment rights, it cannot be casually allowed." *Id.* at 2464. Meanwhile, TVA cites the Supreme Court's opinion in *Johanns v. Livestock Marketing Association*, 544 U.S. 550 (2005), in which the Supreme Court held government speech is not subject to a First Amendment compelled-subsidy challenge. *Id.* at 559. Ultimately, the Court finds it unnecessary to address these arguments because the members' complaints do not rise above the level of generalized grievances.

A generalized grievance is a nonjusticiable claim of harm "to [plaintiff's] and every citizen's interest in proper application of the Constitution and laws, and seeking relief that

17

no more directly and tangibly benefits [plaintiff] than it does the public at large." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (internal quotation marks omitted); *Child.'s Health Def. v. FDA*, 573 F. Supp. 3d 1234, 1242 (E.D. Tenn. 2021) (quoting *In re FirstEnergy Sols. Corp.*, 828 F. App'x 321, 323 (6th Cir. 2020)).[7] However, "[t]he fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance." *Spokeo*, 578 U.S. at 339 n.7. The bar against generalized grievances "serves vital interests going to the role of the Judiciary in our system of separated powers." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013).

The Court finds that plaintiffs' members' challenges are generalized grievances. As noted, plaintiffs complain that TVA causes their members harm because TVA uses the members' rate payments to fund memberships with outside groups that engage in activities with which the members disagree. For example, one member asserts that he is "concerned that money that [he] pay[s] TVA for [his] electricity is being used to counteract [his] efforts at [Energy Alabama] by funding . . . organizations that advocate for fossil fuels," and the member "object[s] to having any part of [his] electricity bill payments used to support

---

[7]    There is some conflicting authority regarding whether the generalized grievance limitation is a prudential standing limitation or an Article III requirement. *Compare Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) ("A litigant 'raising only a generally available grievance about government . . . does not state an Article III case or controversy'"), *with Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 206 (6th Cir. 2011) (noting the generalized grievance requirement is prudential). The Supreme Court's opinion in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (6th Cir. 2014), appears to hold the rule against generalized grievances is constitutional. *Id.* at 127 n.3. Yet the Sixth Circuit has suggested the rule against generalized grievances is prudential even after *Lexmark. See, e.g.*, *Moncier v. Haslam*, 570 F. App'x 553, 556 (6th Cir. 2014) (citations omitted). Ultimately, the distinction is not consequential because "a plaintiff must meet both constitutional and prudential requirements to establish individual standing." *Smith*, 641 F.3d at 206.

18

[these kinds of activities] . . . ." [Doc. 20-2 p. 2]. Another member expresses concern of his ratepayer dollars being used to fund groups that engage in political activities "directly contrary to my values and my interest in protecting the environment where I live and recreate" [Doc. 20-12 p. 2].

The Court finds that plaintiffs' members' individual rate payments do not provide a basis for associational standing. First, the Sixth Circuit, following Supreme Court jurisprudence, has repeatedly held that taxpayers do not have standing to challenge government actions merely because they pay taxes. *Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012); *Am. Atheists, Inc. v. City of Detroit Downtown Dev. Auth.*, 567 F.3d 278, 284 (6th Cir. 2009) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006)).[8] While the instant case is not itself a taxpayer-standing case given that TVA is not funded by tax revenue [Doc. 1 ¶ 31],[9] the same rationale giving rise to the no-taxpayer-standing rule applies in equal force here because a vast number of citizens make payments to TVA, and thus plaintiffs' members' alleged economic injuries are not unique. *See Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 598–600 (2007) (stating that taxpayers do not have standing to challenge government expenditures merely

---

[8] There are exceptions to the general no-taxpayer-standing rule. However, the rationales underlying those exceptions are not applicable here. For example, the instant case does not involve an Establishment Clause challenge. *See Cuno*, 547 U.S. at 347–49 (discussing *Flast v. Cohen*, 392 U.S. 83 (1968), and the limited exception for taxpayer standing encompassed therein). Nor have the parties pointed to any applicable exception to this general rule.

[9] *See* Richard J. Campbell, Cong. Rsch. Serv., R43172, *Privatizing the Tennessee Valley Authority: Options and Issues* 3 (2013), crsreports.congress.gov/product/pdf/R/R43172 ("TVA is now fully self-financing . . . . TVA makes no profit and receives no tax money.").

because they paid taxes and describing separation of powers concerns raised by taxpayer standing).[10]

Additionally, the Court finds plaintiffs have not demonstrated that their members' alleged First Amendment harm is particularized. It is true that the members each individually claim to support environmental initiatives and suffer harm from environmental change [Docs. 20-2–20-13]. But conceivably, everyone who pays TVA's rates may have some interest in the environment and sustainable energy; however, plaintiffs' members do not demonstrate any relationship between their rate payments and the outside groups' activity that allegedly harms them. Indeed, the Court has reviewed the submitted declarations, and it does not appear that the members attempt to trace their specific rate

---

[10] Plaintiffs also argue they suffer economic injury via increased rate payments due to TVA's involvement with the outside groups [*See* Doc. 21 pp. 25–26]. While economic injury at times constitutes Article III harm, it does not suffice when the harm relates to a generalized grievance. *See Massachusetts v. Mellon*, 262 U.S. 447, 487 (1923) (describing a taxpayer's injury due to government spending as "comparatively minute and indeterminable").

This point also explains why the Supreme Court's opinion in *Janus*, 138 S. Ct. 2448, does not change the Court's conclusion. The Court in *Janus* held that a nonmember of a union could not be compelled to pay any portion of a union's fee if the nonmember did not join the union and disagreed with its activities. *Id.* at 2464–66, 2486. But the right to maintain a compelled-subsidization claim necessarily yields to Article III's requirement that a plaintiff suffer a particularized injury that is not a generalized grievance. *See Int'l Union of Operating Eng'rs, Loc. 139 AFL-CIO v. Daley*, No. 19-CV-1233, 2020 WL 1032340, at *3–4 (E.D. Wis. Mar. 3, 2020) (stating that the plaintiffs could not maintain a compelled-subsidization claim without first demonstrating standing).

Separately, the Court notes that plaintiffs' argument also suffers from redressability shortcomings. Namely, even if the Court ordered TVA to respond to the Petition as plaintiffs request, and indeed, even if TVA granted the Petition, plaintiffs have not demonstrated their harm would be redressed. This is because TVA would still be free to pay membership dues and fees to other organizations falling outside the scope of the Petitioners' proposed regulation. Thus, plaintiffs have not demonstrated their rates would decrease if they succeeded. *See Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 136 (2011) (noting that taxpayer standing suffers from causation and redressability shortcomings because it "rest[s] on unjustifiable economic and political speculation" because there is no guarantee relief would decrease a taxpayer's tax burden).

20

payments to challenged expenditures of TVA.  Thus, at core, the members' alleged harm is akin to disagreement with the manner in which TVA spends its revenue, and on that theory, all of TVA's ratepayers would have standing to challenge any action of TVA with which they disagree.  Accordingly, the response plaintiffs seek would "no more directly and tangibly benefits [plaintiffs] than it does the public at large."  *See Lance*, 549 U.S. at 439.[11]

Therefore, the Court concludes plaintiffs do not have associational standing.[12]

## IV. Conclusion

For the foregoing reasons, TVA's motion to dismiss [Doc. 14] will be **GRANTED** and plaintiffs' motion for summary judgment [Doc. 20] will be **DENIED**.  This action will be **DISMISSED**.  A separate order will enter.

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

---

[11]  The Court notes that courts have repeatedly found personal disagreement to be an insufficient harm.  *See Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2100 (2019) (Gorsuch, J., concurring in the judgment) ("Who, after all, would have trouble recasting a generalized grievance about governmental action into an 'I-take-offense' argument for standing?"); *Glennborough Homeowners Ass'n v. U.S. Postal Serv.*, 21 F.4th 410, 415 (6th Cir. 2021) (noting that a "purported indignity . . . falls well short of a concrete harm needed to establish Article III standing"); *Smith*, 641 F.3d at 207  (finding that any complaints deriving from psychological harm that teachers suffered when they were terminated and their positions were outsourced to a private religious institution were generalized grievances unless they could establish taxpayer standing).

[12]  Because plaintiffs have failed to demonstrate their members have suffered an Article III injury, the Court need not consider the second and third requirements for associational standing. *See Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 537 (setting forth the three requirements, all of which must be met, for associational standing).